C. George Carlberg, Appellant, v. Richard L. Metcalfe et al., Appellees.

Filed December 23, 1930. No. 27675.

*John P. Breen,* for appellant.

*John F. Moriarty, Harry B. Fleharty, Thomas J. O'Brien, F. H. Woodland* and *Clinton Brome, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Thompson, Eberly and Day, JJ.

DAY, J.

This is an action brought by a resident, elector and tax-payer to enjoin the city of Omaha from proceeding to carry out the provisions of an act of the legislature authorizing it to establish and maintain a municipal university. The plaintiff contends that the legislative act, chapter 200, Laws 1929, is unconstitutional and void. The defendants filed demurrers to the petition of the plaintiff, which were sustained by the trial judge, the Honorable Francis M. Dineen. The plaintiff elected to stand upon his petition and refused to plead further, whereupon the action was dismissed.

The record in this case is very brief, consisting only of the petition and the demurrer of the several defendants. The defendants are the councilmen of the city of Omaha and the appointed regents of the projected university. In the present state of the record, the pleadings establish the questions of fact in the case. The city of Omaha, pursuant to the power and authority conferred upon such a city by article XI of the Constitution became on July 18, 1922, a home rule city by adopting the "existing law" or charter governing it as its "home rule" charter. The legislative act, which the appellant contends is unconstitutional and void, authorizes the establishment, maintenance, and operation of a municipal university in cities of the metropolitan class, upon a vote of the electors thereof, provides for its management and control by a board of regents, and a special tax to be levied annually for the support of such university. By virtue of the authority conferred by this legislative act, the question was submitted to a vote of the electors of the city of Omaha, with the result that the majority of the votes cast upon the proposition were in favor of it. The city council of the city of Omaha then passed an ordinance establishing the university under the provisions of the statute.

It is urged by the appellant that, the city having adopted a "home rule" charter under the provisions of article XI of the Constitution, the legislature was excluded from any right to authorize the establishment and maintenance

of the university provided for by said act. The constitutional provision under which the city adopted its "home rule" charter is as follows: "Any city having a population of more than five thousand (5,000) inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state." Const. art. XI, sec. 2.

The effect of the adoption of a "home rule" charter has been heretofore considered by this court in several cases. In *Schroeder v. Zehrung,* 108 Neb. 573, we held: "The provisions of section 3, art. III of the Constitution, relating to the referendum, have reference to the acts of the state legislature only, and are not applicable to municipal legislation." The court cited with approval upon this point *Simpson v. Paddock,* 195 Mich. 581; *Heilbron v. Sumner,* 186 Cal. 648; and *Ex parte Johnson,* 20 Okla. Cr. Rep. 66.

In *Consumers Coal Co. v. City of Lincoln,* 109 Neb. 51, the court proceeded to advance a step in defining the situation created by the adoption of a "home rule" charter under our constitutional provision:

"By section 2, art. XIa of the Constitution, power is conferred upon the electorate of a city to frame a charter for its own government as fully and completely as the electorate of the state may form a state Constitution, subject only to the limitations contained in said section that said charter shall be 'consistent with and subject to the Constitution and laws of this state.'

"The purpose of the constitutional provision is to render cities independent of state legislation as to all subjects which are of strictly municipal concern; therefore, as to such matters general laws applicable to cities yield to the charter." Then follows in order of consideration by this court *Sandell v. City of Omaha,* 115 Neb. 861, which cites, quotes, and approves the rule as to subjects which are exclusively for a "home rule" city to determine and from which state legislation is excluded.

In *Schroeder v. Zehrung,* 108 Neb. 573, the court again held: "While a home rule charter of a city, adopted pur-

suant to the constitutional provisions, may not contravene any provision of the Constitution or of any general statute enacted by the legislature, it is, in all other respects, binding and controlling. A city may enact and put into such character any provisions for its government that it deems proper, so long as they do not run contrary to the Constitution or any general statute."

To a like effect is *State v. Johnson,* 117 Neb. 301, in which we used this language: "In matters relating exclusively to municipal affairs, the Lincoln home rule charter prevails over conflicting provisions in a state statute containing legislation on the same subject applicable to cities of different classes generally."

We have cited at some length from the cases heretofore decided by this court, because an examination of the adjudicated cases in other jurisdictions impresses us with the desirability and even the necessity of keeping the history of the judicial construction of this constitutional provision ever in mind. It is the well-established law of this state that, in matters of strictly municipal concern, cities which have adopted a "home rule" charter under article XI of the Constitution are not subject to state legislation. But, in such cities, state legislation is not excluded upon such subjects as pertain to state affairs as distinguished from strictly municipal affairs.

Now, the appellant contends that the establishment and maintenance of the university by the City of Omaha, as provided by chapter 200, Laws 1929, is a municipal concern, a municipal affair as distinguished from a matter of state concern. A careful perusal of the decisions of the courts of other states, wherein the question has arisen as to what are the functions of the municipality and the functions of the state in relation to each other, clearly indicates that this is a difficult and intricate task.

To support his contention, the appellant cites the case of *Sinclair v. City of Lincoln,* 101 Neb. 163. This case held that a tax authorized by the city of Lincoln, to induce the state to keep the state university in Lincoln rather than move it to a location on the state farm, 2½ miles

distant and just outside the city limits, was one for a cor-porate or municipal purpose. This case arose and was decided prior to the adoption of a home rule charter by the city of Lincoln. Hence, it was not decided with reference to a "home rule" charter or the constitutional provision authorizing its adoption. However, considering the case as an authority upon the question presented here, it decided that the matter of the *location* of the state university was a municipal matter or concern. It cannot be made to hold, by any construction of words, that the university was a "municipal affair" or a "municipal concern" of the city of Lincoln.

*Turner v. Hattiesburg,* 98 Miss. 337, also cited by the appellant is almost identical to the *Sinclair* case. There is dictum in the case which supports the appellant's contention. Nevertheless, the question before the court in that case was the validity of a tax for the purpose of procuring the location of a state normal school in that city. Whatever may be stated in that opinion, the point decided, as shown by a careful reading of the opinion and the syllabus, was that taxes to pay bonds, the proceeds of which were used to induce the location of the state normal college, were for a municipal purpose. Likewise, this case was not decided under a "home rule" charter adopted under a constitutional provision, with a view to determine under such a situation the apparently illusive line of demarcation that differentiates between state and municipal affairs.

Appellant cites us to *Law v. San Francisco,* 144 Cal. 384, wherein the court held that the issuance of bonds for the repair of existing schoolhouses and for new schoolhouses is a municipal affair; that, also, the charter provisions for a bonded indebtedness for municipal improvements, including schoolhouses, must prevail over a general state law. The opinion in this case quotes and approves language to the same effect in the previous case of *In re Wetmore,* 99 Cal. 146. In California there was a complicated system of school control. In the early days the cities operated under a special legislative charter which provided for a department of education. The Constitution of 1879 did

not entirely remove the schools from the control of the municipalities. One vestige of the former system remaining seems to have been city control over bonded indebtedness for buildings. However, the same court held in *Hancock v. Board of Education*, 140 Cal. 554, that the school system is a matter of general concern, and not a municipal affair. To the same effect also is *Kennedy v. Miller*, 97 Cal. 429. These cases were decided prior to *In re Wetmore, supra*, and *Law v. San Francisco, supra*. The latter cases seem to be a qualification of the rule formerly announced. These cases were discussed in the case of *Los Angeles City School District v. Longden*, 148 Cal. 380, which attempted to reconcile them, but in fact overruled them as an apparent authority for the doctrine that education was a municipal affair. It appears that the legal history of the schools in California so affect the decisions of the court on this question that they can have but little persuasive force in the solution of our problem. For an analysis of the California cases on this subject, see McBain, Law and Practice of Municipal Home Rule, 200, and "Municipal Affairs" by William Carey Jones, 1 California Law Review, 132.

In passing, we note that *The Mayor v. Baker*, 73 Ga. 686, also cited by appellant, holds that, unless the municipal charter forbids, the city may build a schoolhouse. As indicated, we have examined every case cited by appellant, and we have not neglected the cases cited by appellees. Particular attention has been given to those decisions cited from states which have a similar constitutional provision for the adoption of a "home rule" charter. The appellees cite several Missouri cases. An examination of the Missouri cases brings us the following information: That they throw no great light upon our subject. At a time much later than any of the cases cited, the court in *State v. Police Commissioners of Kansas City*, 184 Mo. 109, stated their precedents were of little help in determining the distinction between local and state matters. These cases, together with many other cases from other jurisdictions, are not strictly in point, but they are sufficiently analogous to demonstrate the difficulty of determining a

test by the application of which we may determine whether a matter is one of strictly municipal concern or one of state concern.

Up to the present time this court has decided, in cases arising under a home rule charter adopted under the constitutional provision, that voting municipal bonds for an aviation field (*State v. Johnson*, 117 Neb. 301) and that improving the streets, alleys and highways within the corporate limits of a city (*Salsbury v. City of Lincoln*, 117 Neb. 465) are subjects of strictly municipal concern. In *Consumers Coal Co. v. City of Lincoln*, 109 Neb. 51, this court said: "It is not easy in all cases to distinguish between municipal powers and state powers. * * * We must therefore content ourselves with the consideration of each case as it arises, applying those principles which precedent and logic approve."

It is evident that article XI of the Constitution contemplated a division between state affairs and municipal affairs. The language is that certain cities may frame a charter for their own government consistent with the Constitution and laws of the state. The Constitution does not define which laws relate to matters of strictly municipal concern and which to state affairs. There is no sure test which will enable us to distinguish between matters of strictly municipal concern and those of state concern. The court must consider each case as it arises and draw the line of demarcation. In *Helmer v. Superior Court*, 48 Cal. App. 140, the court of appeals, following *Ex parte Daniels*, 183 Cal. 636, and *In re Murphy*, 190 Cal. 286, recognized the necessity of following such a rule, "Until the advent of the automobile, interurban traffic was so small as to be negligible and, as a result, traffic regulations were a matter of concern only to the inhabitants of the city. But when autos and motor-trucks invaded our highways and streets in tens and hundreds of thousands, a matter that yesterday was local has become of state and nation-wide importance today. * * * The term 'municipal affairs' is not a fixed quantity, but fluctuates with every change in the conditions upon which it is to operate."

The establishment and maintenance of a university by the city of Omaha relates to the matter of education. Education has always been a matter of state concern in Nebraska as distinguished from a matter of strictly municipal concern. It has been recognized in Constitution and Statute as a matter of state policy. From an early date by our Constitution the state legislature was solemnly charged with a duty to provide free instruction in our public schools. Const. art VII, sec. 6. In fact, the entire article is devoted to the subject of education. The state has ever exercised by general laws control over education. For example, the laws relating to compulsory education, to patriotic instruction in schools, to certification of teachers, to inspection of private denomination and parochial schools and to many other provisions of our school law, all indicate that the state of Nebraska has always considered education a state affair.

Before the constitutional amendment the state legislature could legislate upon any and every subject with reference to cities. This amendment was therefore a limitation upon the power of the legislature. *State v. Dodge County,* 8 Neb. 124; *Elmen v. State Board of Equalization and Assessment, ante,* p. 141. The Constitution expressly defines the limitation to the power of state legislation as excluding it from matters of local government. The charter must conform to the Constitution and laws of the state. The right of the state to legislate upon educational matters has not been limited by the Constitution. Education in the city of Omaha is not a strictly municipal affair. It is preeminently a state affair. The schools, in which are educated the children who are to become in time the directors of our political destinies, are matters of state and not of strictly municipal concern. To have educated and intelligent men and women cannot be a strictly local concern. It concerns and affects the whole state. "Essentially and intrinsically, the schools in which are educated and trained the children who are to become the rulers of the commonwealth are matters of state, and not of local, jurisdiction. In such matters the state is a unit and the

legislature the source of power. The authority over schools and school affairs is not necessarily a distributive one to be exercised by local instrumentalities, but, on the contrary, it is a central power residing in the legislature of the state. It is for the lawmaking power to determine whether the authority shall be exercised by a state board of education, or distributed to county, township, or city organizations throughout the state." 19 R. C. L. 765, sec. 71. This was quoted with approval in *Salt Lake City v. Board of Education*, 52 Utah, 540. The constitutional provision by which certain cities may adopt a home rule charter does not render invalid legislation which provides that such a city may establish and maintain a municipal university. In accepting the privilege conferred upon it by such legislation the city, in providing said educational institution, acts as a political subdivision of the state in a matter of state concern. It acts very much in the same manner as it does in the maintenance of a police department and other matters unquestionably of state concern. This university was not forced on the city of Omaha. It was established as provided by a general law of the state. A petition of 10 per cent. of the registered voters caused the council to submit the matter to a vote, and a majority of the voters at said election voting on the question voted to establish and maintain such university.

Lastly, the powers given the board of regents to certify the tax for the establishment and maintenance of the university is challenged as unconstitutional. In the consideration of this question, the appellees and appellant have discussed the question as to whether the act in question created a public corporation, separate and distinct from the municipality of Omaha. We specifically do not pass upon the question as to whether or not the act under consideration creates a public corporation. By the statute the legislature delegates the duty to levy the tax for the establishment of said university to the city council of any city authorized to established such a school under the act. It is not contended that they are without authority, but it is said that the board of regents of the projected university

are an appointive and administrative body, and that therefore they are not competent under the Constitution to levy a tax. Judge Cooley in his work on Taxation (4th ed.) vol. 1, sec. 81, states that the legislative power to tax cannot be delegated to mere administrative officers. If, as is contended by the appellant, the certification to the city council of the amount necessary to run the university leave the city council a mere administrative act to perform, and the tax is in fact levied by the regents of the university, who are an administrative body, an additional statement by Judge Cooley is pertinent. In the same section, he says: "Of course, if the people of a local district have in any way consented to the delegation of the power to tax to a local board, they cannot contest the validity of the delegation of power"—citing *People v. Knopf*, 171 Ill. 191; *People v. Morgan*, 90 Ill. 558; and *Brown v. Baltimore & O. & C. R. Co.*, 186 Ind. 81; and to the same effect, *Woodward v. Fruitvale Sanitary District*, 99 Cal. 554; *West Chicago Park Commissioners v. Sweet*, 167 Ill. 326. So that even a consideration of this matter from a view most favorable to the appellant forces us to the conclusion that the method provided for raising funds for this institution does not render the statute unconstitutional.

The judgment of the lower court in sustaining the demurrers of the defendants to the plaintiff's petition and dismissing the action is

AFFIRMED.