EPPLEY HOTELS COMPANY, APPELLANT, V. CITY OF LINCOLN ET AL., APPELLEES.

276 N. W. 196

FILED NOVEMBER 26, 1937. NO. 30148.

*J. R. McManus, Hotz & Hotz, C. J. Campbell* and *John J. Wilson,* for appellant.

*Loren H. Laughlin* and *George A. Piper,* contra.

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

GOSS, C. J.

Plaintiff appealed because unsuccessful in an effort to enjoin the city of Lincoln from collecting real estate taxes for 1931 to 1936, inclusive, upon lands occupied by the Lincoln Hotel and the Capital Hotel. It claimed (1) that the assessments were void because not made by a person legally authorized, in that the statutes specifically provide for the election of an assessing officer by the people in a city of the population of Lincoln and none was so elected; and (2) that the statutes specifically prohibit a city of the population of Lincoln from levying more than $365,000 a year on all taxable property, real and personal, and the city levied and assessed during all those years amounts far in excess of the statutory limitation.

Plaintiff alleges that these taxes are void and their collection would amount to a taking of its property without due process of law under both the state and federal Constitutions.

Until it adopted a home rule charter in 1917, the city of Lincoln had operated under a legislative charter set up in 1901 for cities of its population by a complete act known as chapter 16, Laws 1901, approved March 27, 1901; with few amendments this has been carried down and is now found in chapter 15, Comp. St. 1929. In 1911 the legislature passed an act authorizing cities having 5,000 or more population to adopt the provisions of the act called the "Commission Plan of City Government," chapter 24, Laws 1911, approved April 7, 1911. Lincoln adopted that plan in 1912. It became effective in 1913 and has continued in use. It is codified as chapter 19, art. 4, Comp. St. 1929. It was amended in 1923 to enable cities of 2,000 to 5,000 inhabitants to come into the plan. Laws 1923, ch. 141.

The distinguishing features of the commission form of government as applied to Lincoln were that the people were to elect, "not by or from wards or districts, but at large, the following officers and none others, to wit, * * * five councilmen." The council "shall have and may exercise all executive or legislative or judicial powers * * * hitherto provided by law for or within any such city, except officers named in the state Constitution." The executive and administrative powers, authorities and duties were distributed into and among departments as follows: (1) Public affairs, (2) accounts and finances, (3) public safety, (4) streets and public improvements, and (5) parks and public property. "The council shall provide, as nearly as may be, the powers and duties to be exercised and performed by, and assign them to the appropriate departments and may prescribe the powers and duties of all officers and employees of the city * * * and may make such other rules and regulations as may be necessary or proper for the efficient and economical management of the business affairs of the city." By majority vote the council elects one of its number as president of the council, to be known as mayor, designates one member to head each department and shall "elect as many of the city officers provided for by the then existing laws or ordinances governing any such city as may, in the judgment of the council, be essential and necessary to the economical but efficient and proper conducting of the government of the city."

By an election held November 14, 1917, the people of Lincoln adopted a home rule charter. It has continued to be governed by or under such a charter. The amendment to the Constitution providing for such a charter was adopted by the people of the state in 1912. That amendment said, in part: "Any city having a population of more than five thousand (5,000) inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state." Const. art. XI, sec. 2.

The Lincoln home rule charter as originally adopted

provided for power in the council to levy a tax of not to exceed $365,000 on real and personal property in any one year plus any judgments against the city and plus principal maturing on any bonded debt. This charter provision was amended August 12, 1930, by vote of the people of Lincoln so as to raise the amount of the maximum levy to $800,000, with power to levy an additional amount to pay judgments and interest on the bonded debt as well as the principal of any maturing bonded debt. There was added, also, the power to increase the levy at the rate of $15,000 annually. The change also provided that the council should at no time make a levy of taxes for general operating expenses in an amount to exceed $7\frac{3}{4}$ mills upon the assessed valuation. The amendment of the home rule charter August 12, 1930, as further amended May 5, 1931, gave the council additional power to levy, in excess of amounts theretofore provided, $25,000 each year commencing on the beginning of the fiscal year, September, 1930, for ten years, for the purpose of erecting a municipal building at Tenth and Q streets and for fire stations and for housing street department machinery and equipment. In addition, beginning in September, 1930, the council was by the charter authorized to levy for ten years a tax of $50,000 annually for the purpose of providing storm sewers.

Under the home rule charter the general plan of the commission form of government has been followed. It is vigorously asserted by appellant that the taxes attacked are void because the city failed to elect a tax commissioner. The council received, in the first instance, its values of property through P. H. Mathews, a tax commissioner appointed by the city council, and then the council duly equalized, levied and assessed the taxes. Mathews has served in the capacity of the appointed tax commissioner through all the years involved in the taxes assailed by appellant. He served under oath and was bonded as such officer. He has viewed real estate, made appraisals and assessments thereof, and originally considered all personal property and its values until recent years when, the city

becoming too large, he has copied the county personal list of personal taxes. These he views personally and passes them on to the city council with the real estate lists and they equalize the values and perform the functions of the city equalization board. He has had a separate office, with the sign "Tax Commissioner" on the door until recently, when he moved into the city treasurer's office. He has had continuous duties with the public in relation to assessments, has always used letterheads designating him as "Tax Commissioner," and has always received a salary as such officer.

In *State v. Ure,* 91 Neb. 31, 135 N. W. 224, the relator sought, by original action here for a mandamus, to compel Ure, city treasurer of Omaha, a city under the commission form of government, to issue a receipt to the relator for his filing fee tendered but refused, so that he might run for the office of city clerk. In an opinion by Judge Letton, the relief was denied on the theory that the office was made appointive under the commission form of government. The same principle applies in the instant case. It was not necessary or proper to elect a tax commissioner in Lincoln under the form of local government under which that city was operated.

The second and last point of attack by appellant is that the city had no power by its charter to increase the amount of taxes levied by it for general purposes over the $365,000 allowed in the legislative charters for cities of the size of Lincoln. The provision is found in section 15-803, Comp. St. 1929. That is a part of chapter 15 of the 1929 Statutes, which is understood to comprise the general charter for all cities of 40,000 to 100,000 people unless and until they have complied with the Constitution by a vote of their people and have thus adopted a home rule charter to supersede this general charter. The people of Lincoln did that and thus became empowered to operate under that home rule charter and amendments thereto validly made. This particular section of the statute had no particular sanctity beyond any other section of the statutory charter.

It was no part of any general revenue statute. It provided for the levying of no taxes for any purposes other than for the uses and purposes of the city and upon no other property except that within the physical limits and jurisdiction of the city. If a home rule charter means what the words imply, why were not the people of Lincoln authorized by the Constitution to hold a charter convention or to have a local constitutional convention of their own and to vote upon amendments to any charter by which they were formerly governed and make the charter thereby formed supersede the charter formerly existing, so long as they did not thereby violate the Constitution or general laws of the state?

In *Schroeder v. Zehrung*, 108 Neb. 573, 188 N. W. 237, Judge Good, then a district judge sitting in this court, said: "The city of Lincoln has adopted a home rule charter pursuant to the provisions of article XI of the state Constitution. Section 2 of that article provides, among other things: 'Any city having a population of more than five thousand (5,000) inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state, * * * and if a majority of such qualified voters, voting thereon, shall ratify the same, it shall at the end of sixty days thereafter become the charter of said city, and supersede any existing charter and all amendments thereof.' Plaintiff insists that under this constitutional provision the city is still governed by the provisions of the legislative charters under which it was previously governed. We are not inclined to this view. If a city, after having adopted a home rule charter, was still to be subject to all the provisions of the former legislative charters, there could be no object or purpose in adopting a home rule charter. While a home rule charter adopted pursuant to the constitutional provision may not contravene any provisions of the Constitution or of any general statute enacted by the legislature, it is, in all other respects, binding and controlling. A city may enact and put into its charter any provisions for its government that

·it deems proper, so long as they do not run contrary to the Constitution or to any general statute."

The principle announced in *Schroeder v. Zehrung, supra,* defining the meaning of the home rule section of the Constitution, has not been changed in the more than fifteen years that have passed since the opinion was published on May 6, 1922. When the people of the state said, by adopting the home rule charter amendment, that such a charter should "supersede any existing charter and all amendments thereof," they had in mind that cities of Lincoln's class had a legislative charter applicable in all its terms to cities of that class. They delegated to such cities the power to form and adopt a home rule charter and thereafter to be governed by it without being compelled to go to the legislature for power every time anything in that line was desired by the city. The Lincoln home rule charter did thereby, in the language of the charter, "supersede" the existing legislative charter. It and its amendments from time to time have continued to be and still are the charter of cities of the same population whose people have not taken advantage of the home rule charter of the Constitution.

In *Consumers Coal Co. v. City of Lincoln,* 109 Neb. 51, 189 N. W. 643, opinion by Redick, district judge, referring to home rule charters, the second point of the syllabus says: "The purpose of the constitutional provision (as to home rule charters) is to render cities independent of state legislation as to all subjects which are of strictly municipal concern; therefore, as to such matters general laws applicable to cities yield to the charter."

In *Carlberg v. Metcalfe,* 120 Neb. 481, 234 N. W. 87, Judge Day reviews briefly some of the home rule charter cases from our state and cites cases from other states. The opinion holds, in effect, that, notwithstanding the city had a home rule charter, it had power to take advantage of a general act of the legislature authorizing such a city to establish and maintain a municipal university. This was sustained on the ground that education is a matter of

state concern in Nebraska, as distinguished from a matter of strictly municipal concern. The second point of the syllabus says: "The Constitution does not define which laws relate to matters of strictly municipal concern and which to state affairs. There is no sure test which will enable us to distinguish between matters of strictly municipal concern and those of state concern. The court must consider each case as it arises and draw the line of demarcation."

As we have intimated before, city taxes, to be used strictly for city purposes, are a matter of municipal concern and in no way concern the state in their subject-matter nor in the way they were assessed and levied in the case at bar.

On several occasions, the evidence shows, plaintiff, by its agents, appeared before the city council, sitting as a board of equalization, in an effort to reduce valuations on its properties. This probably does not estop it from seeking an injunction against the taxes, but it is very inconsistent with its views now expressed that the taxes are void because there was no city tax commissioner and because the city council had no power to sit as a board to equalize the taxes on the values before them.

In bankruptcy proceeding instituted by appellant at Omaha in 1934, under section 77-B of the bankruptcy act, the appellant listed the taxes then admitted to be due the city of Lincoln as a part of its debts. These facts were in evidence and, while they may not be taken advantage of legally by the city, they are of some value in appraising the good faith and equity of appellant's attitude here.

We do not think there was or is any violation of the due process clauses of either the state or federal Constitutions found herein. On the other hand, we are of the opinion that the taxes levied and assessed against the properties of appellant are valid and that the judgment of the district court was right. The judgment is

AFFIRMED.