J. Lloyd McMaster, Appellee, v. Rees Wilkinson, Appellant.

15 N. W. 2d 348

Filed July 14, 1944. No. 31813.

 

*Herman Ginsburg,* for appellant.

*Baylor, Tou Velle & Healy, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

This is an election contest, growing out of the Lincoln city election held on May 4, 1943, and involved only the office of city councilman. J. Lloyd McMaster is the contestant and appellee, and Rees Wilkinson is the contestee and appellant. The judgment in the district court was that contestant was entitled to the office, and ouster was issued against contestee, who appealed to this court.

At the primary election held in the city of Lincoln on April 6, 1943, they were both nominated for the office of city councilman. After the city election held May 4, and the canvass of the votes by the council on May 10, the contestee was declared elected by the city council. The contestant, claiming to be legally entitled to said office, instituted this action in the county court for Lancaster county on May 26, under the state law, without having made any attempt to contest said election under the provisions of the charter of said city.

A judgment was entered in the county court in favor of the contestant, whereupon the contestee appealed to the district court, in which court the case was tried upon the same pleadings as had been filed in the county court, except that the contestee was allowed to amend his answer. The district court found that the contestant received 4,774 16/17 votes and that the contestee had received 4,767 7/17 votes, and the contestant was declared elected city councilman,

and the sheriff was directed to oust from the office the contestee and to put the contestant into possession of said office and all its books and papers.

The original complaint was filed by the contestant against Rees Wilkinson, contestee, Arthur J. Weaver, Jr., and L. H. De Brown, being the three persons declared elected to the office of councilman by the city council, acting as a canvassing board of said city, but in the county court on July 23, 1943, a stipulation was entered into that the cause be dismissed as to Arthur J. Weaver, Jr., and L. H. De Brown, and that the sole and only issues to be determined are between the contestant and the contestee.

In the judgment entered in the county court, after all of the ballots had been recounted, it was found by the court that the contestant received 4,777 votes and the contestee 4,768 votes at the election held May 4 for the office of councilman, and that said contestant should be and is declared duly elected to said office.

Immediately after the election on May 4, it appeared from an unofficial count of the election that the contestant had been defeated by 35 votes, but when the official canvass was made by the city council on May 10 it showed that the contestee had won by four votes. A complaint in action of contest was filed in the county court within the time permitted by law, and the decision in that court was in favor of the contestant.

There are 88 voting precincts in the city of Lincoln, and there were introduced as exhibits in this court 88 boxes containing the official ballots cast at such election, each box containing all of the ballots cast in one of the 88 precincts, the number of such precinct being duly inscribed on the outside. On top of each of the 88 boxes, there is an envelope fastened thereto, in which is the poll book of that particular precinct, bearing the signature of the judges and clerks of election and a list of every person who voted at such election in that precinct. Each box was sealed on July 20, 1943, by seals bearing the date and the signature, "Reid Co. J."

Exhibit No. 102 is a package containing the absent and disabled voters' ballots, marked by the voter, together with the envelopes in which the voters sent them to the city clerk, together with all of the applications for absent voters' ballots, and an "Absent Voter's Identification Envelope" for each ballot, which box with its contents was also sealed in the county court by the county judge.

The action was filed in the county court under the provisions of section 32-1009, Comp. St. 1929. This law has been in force since 1879, and provides that the county court shall hear and determine contests relating to the election of officers of cities within said county.

The first error assigned by the contestee for reversal is that, as election to the city council is a matter of local municipal concern only, neither the county court nor the district court upon appeal had any jurisdiction over an election contest between two city councilmen, but that such a contest must be brought under section 6-122 of the Municipal Code of 1936 of the city of Lincoln, which provides: "That whenever any candidate for any office, or any elector chooses to contest the validity of an election of any officer, he shall, within two days after the closing of the polls give notice in writing to the person whose election he intends to contest of his intention so to do, a copy of which notice shall be filed with the City Clerk before the time fixed for the canvass of the returns as hereinbefore provided for; * * * ."

It is argued by the contestee that no such notice of a contest was given by the contestant within two days of the election, as required by this section of the city ordinance.

It is also claimed by the contestee that the general laws of the state yield to the home rule charter provision of the city of Lincoln in all matters of purely local concern, citing *State ex rel. Fischer v. City of Lincoln,* 137 Neb. 97, 288 N. W. 499, which was a mandamus proceeding by a former chief of the fire department, who had been discharged without a hearing, to compel a reinstatement, in which it was held that the city council of Lincoln had the right to discharge one of its firemen without a hearing before the coun-

cil. This court held that this was a question of purely local concern, but such case is not an authority to control our opinion in the case at bar.

In *Eppley Hotels Co. v. City of Lincoln*, 133 Neb. 550, 276 N. W. 196, it is said: "A city may enact and put into its home rule charter any provisions for its government that it deems proper so long as they do not run contrary to the Constitution or to any general statute."

In the case of *Axberg v. City of Lincoln*, 141 Neb. 55, 2 N. W. 2d 613, 141 A. L. R. 894, it was held that whether or not an act of the legislature pertained to a matter of state-wide or strictly local concern becomes a question for the court when a conflict of authority arises.

Under the facts appearing in the case at bar, we have reached the conclusion that a contest over the election of a municipal officer is a matter of state-wide concern; that the holding in the case of *Axberg v. City of Lincoln, supra,* is applicable here, and reads as follows: "Where the legislature has enacted a law affecting municipal affairs, but which is of state-wide concern, such law takes precedence over any action by a home rule city under its charter."

The second assignment of error is that the court erred in overruling contestee's demand for a trial by jury. The constitutional right to a trial by jury is confined to cases which were so triable under the common law, and an election contest, under the provisions of statute, is not such a suit as is guaranteed the right to trial by jury under section 6, art. I, Bill of Rights, Constitution of Nebraska. No section of our statute has been cited to us which provides for or authorizes trial by jury in election contests. An election contest is neither an action at law nor a suit in equity; it is a summary proceeding of a political nature. See *Swan v. Bowker*, 135 Neb. 405, 281 N. W. 891; 18 Am. Jur., sec. 314, p. 381; *Ashley v. Wait*, 228 Mass. 63, 116 N. E. 961, 8 A. L. R. 1463.

The third assignment of error might be condensed to the charge that the original ballots, including the 88 boxes, were not preserved in their original condition, free from opportunity to tamper with them.

Four pictures of the clerk's office, the outside windows, and the vault, showing how the boxes of ballots were stored therein, are in evidence. The evidence discloses that this vault door is open all the time that the clerk's office is open; that at least one abstracter goes in and out when he desires; that a former employee of the clerk's office knows the combination of the vault door; and that he has access in the evening to the office.

Such evidence of bare possibility that certain persons may have had access to the vault, in the absence of any suggestion that such persons had any motive for, or did, tamper with the ballots, is not sufficient to reject such ballots when offered in evidence.

If the ballots and the boxes which contain them, when produced in court, have been substantially kept as required by law, and the court is satisfied that they have not been tampered with, and are in the same condition as to markings as when cast, then they may be admitted in evidence. See *Richmond v. Breithaupt*, 110 Neb. 859, 195 N. W. 463; McCrary on Elections (4th ed.), sec. 471.

And, by stipulation of the parties, it was agreed that at the city election held May 4, 1943, the total vote from all the 88 precincts within the city gave the contestant 4,763 votes and the contestee 4,764 votes, exclusive of the absent and disabled voters' ballots.

Assignments of error No. 4 to No. 9 inclusive all relate to various defects alleged in the reception, preservation, counting, and canvass of the absent and disabled voters' ballots. We will now consider those 34 ballots.

The district court found that the absent and disabled voters' ballots were properly preserved in the manner required by law; that the identical ballots were introduced in evidence, and had not been tampered with; that 34 ballots were cast by absent and disabled voters, and that all of said ballots, together with proper envelopes, were delivered to the district court, and that the same agree with the poll book, except as to one ballot received too late to be counted; that of said 34 ballots so cast, 14 votes were cast for con-

testant and 4 for contestee, and if all of said ballots are found valid it would give contestant a total of 4,777 and contestee 4,768 votes.

The first attack is made upon the canvass of these ballots. The home rule charter of the city of Lincoln (art. III, sec. 3) provides that the city council shall canvass the returns. Section 6-114 of the ordinances has the same provision. The evidence shows that the whole city council did not sit as an election board for the purpose of counting the mail votes, but that the matter was referred to a committee.

It appears that a poll book kept by the clerk for the absent and disabled voters' ballots is signed on the sheet at the back, entitled "Official Return," by Arthur J. Weaver, Jr., H. J. Amen and Richard O. Johnson, and the charge is made that the canvassing of these votes was made by a committee of the council only. Richard O. Johnson, who was then mayor, testified that it was his impression that Stanley Maly and "Buster" De Brown were present when the clerk brought these ballots in and began opening them to be canvassed.

Theo H. Berg testified he had been city clerk for 30 years, and being custodian of the records had charge of all the ballots as they were turned over to him. He testified that the official canvass was made by a committee of three members of the city council. But the minutes of the council show that the actual canvass was made by the council, even if they first had a report from a committee.

It is insisted that the case of *Rasp v. McHugh*, 121 Neb. 380, 237 N. W. 394, is authority for rejecting all of the mail votes, as was done in that case. In the *Rasp* case it appears that the box containing the mail votes was turned over to a group of unnamed office employees, who took the box to another room and reported the totals to the canvassing board.

In the case at bar, it appears that, while only three members of the council signed the official return on the mail votes, other members of the council were present during the canvass, and the facts are not the same as in the *Rasp* case at all.

This court holds that there was a substantial compliance with the law in reference to the canvass of these ballots. "The right to an office by virtue of an election by the required number of votes cannot be defeated by the mistake, negligence or misconduct of a canvassing board." 29 C. J. S., sec. 238, p. 347. See *O'Brien ex rel. Miller v. Miller,* 266 Mich. 127, 253 N. W. 241, 106 A. L. R. 387.

The duties of election officers in the matter of canvassing ballots are generally held to be ministerial (*Shaw v. Stewart,* 115 Neb. 315, 212 N. W. 760), or, at most, quasi judicial (*Long v. State,* 17 Neb. 60, 22 N. W. 120). See 18 Am. Jur., sec. 254, p. 346.

It is next charged that the city clerk failed to keep a list of such voters in a poll book in the form required by law. In section 6-101 of the city ordinances, attached as exhibit No. 103, it is provided: "All elections shall be conducted according to the regulations prescribed by the laws of the state governing registration and elections, and the provisions of this chapter."

The general election law of the state, at section 32-804, Comp. St. 1929, relating to absent or disabled voters' ballots, provides: "The clerk shall at once enter said voter's name, postoffice address, residence and voting precinct, * * * in a poll book to be kept by such clerk for such purpose, * * *." While this section was amended by the 1941 legislature (Laws 1941, ch. 57, sec. 4), yet the above provision was unchanged, and is still the law.

An examination of the poll book discloses that the clerk entered only the name of the voter and his election precinct, but he failed to enter in every case the post-office address and residence of each of the disabled or absentee voters who requested ballots.

In our opinion, this failure of the clerk in not keeping this record in the form provided by law should not deprive a *bona fide* elector of his right to have his vote counted, if the elector himself has met all the requirements on his part to be done and performed.

The determination of the questions involved in the case

at bar requires a careful examination of the law relating to absentee voting. Our law allowing voting by mail was first adopted in 1913, beginning with section 2054, Rev. St. 1913. It was generally amended by chapter 94, Laws 1921, and has been more recently amended in 1941 (Laws 1941, ch. 57).

The laws regulating the privilege of absentee voting have generally received a strict construction. See 29 C. J. S., sec. 210, p. 297. The reason is not far to seek, for absentee voting is a privilege granted the elector, and not an absolute right. *State ex rel. Whitley v. Rinehart,* 140 Fla. 645, 192 So. 819; *Matter of Baker,* 126 Misc. 49, 213 N. Y. S. 524; *Sartwelle v. Dunn,* 120 S. W. 2d (Tex. Civ. App.) 130; *Guice v. McGehee,* 155 Miss. 858, 124 So. 643; *Wichelmann v. City of Glencoe,* 200 Minn. 62, 273 N. W. 638; *Bullington v. Grabow,* 88 Colo. 561, 298 Pac. 1059; *Jolly v. Deeds,* 135 Ohio St. 369, 21 N. E. 2d 108; *Torkelson v. Byrne,* 68 N. D. 13, 276 N. W. 134; *Straughan v. Meyers,* 268 Mo. 580, 187 S. W. 1159; *Werber v. Hughes,* 196 Ind. 542, 148 N. E. 149; Annotations, 14 A. L. R. 1256, 35 A. L. R. 819, 121 A. L. R. 939, 132 A. L. R. 374.

It is the policy of the law to prevent as far as possible the disfranchisement of electors who have cast their ballots in good faith, and while the technical requirements set forth in the absentee voting law are mandatory, yet in meeting these requirements laws are construed so that a substantial compliance therewith is all that is required.

We have examined all of the 34 absentee and disabled voters' ballots. Twenty-two of the ballots were apparently handed to Theo H. Berg, city clerk, properly sealed, in envelopes addressed to him. Eight of the ballots were in sealed envelopes, duly registered as provided by law, addressed to Theo H. Berg, city clerk.

In each of these large envelopes of transmission there was a smaller envelope, being the Absent Voter's Identification Envelope, in which the ballots were sealed. This identification envelope bears the signature of the voter, the signature of the officer administering the oath, and setting

out the name of the voter, the number of the precinct and ward in which he is a qualified voter, his post-office address, giving house number, his age, sex, color, occupation, and his time of residence in the precinct, the county, and the state of Nebraska, and if he is a naturalized citizen the date and place of his naturalization.

Of these identification envelopes, 22 appear to be filled out regularly, properly signed and sworn to before an officer authorized to take the acknowledgment. But three of these identification envelopes bear the venue, "State of Nebraska, County of Adams," and state that they were signed before a notary public at Hastings, Nebraska, on April 29, 1943, but the notary public's seal which is attached is a seal issued for Sarpy county, Nebraska, instead of Adams county, Nebraska. Another identification envelope bears the signature of the same notary public, with the venue "State of Nebraska, Saunders County, ss," and signed and sealed at Wahoo, Nebraska, on May 3, 1943, but the seal of this notary public impressed thereon shows that he is a notary public for Sarpy county, Nebraska.

The trial court properly held that these errors made four ballots void.

In an application for a disabled voter's ballot, a notary public gives the name "May A. Leffler," but she signs the affidavit as "Mary A. Leffler," and on the outside of the disabled voter's identification envelope her name is again written by the notary public as "May A. Leffler," and this time she signs the affidavit as "Mrs. May A. Leffler," so it appears that on the application and the disabled voter's ballot she has signed the original application with the name "Mary," but on the envelope her name is given as "May" and she has signed it "May," and it is entered in the poll books as "May," and it appears to be signed by the same person. The objection to this ballot was properly overruled.

On the back of the original ballots cast by the absent voters, 13 of them are signed in ink "Theo H. Berg, City Clerk," which is proper and meets all the requirements of

the law. The other 21 ballots have had a rubber stamp placed upon the back of them, reading "Theo H. Berg, by ——————, Deputy," and on this blank line was written "W. W. Harvey." Objection is made to these 21 ballots on the ground that the law requires that the name of the officer *and his title* appear on the back of the ballots, and the title of the officer does not appear on these 21 ballots.

In the case of *Rasp v. McHugh, supra,* this court held that it was necessary, in complying with section 32-812, Comp. St. 1929, that before issuing the ballot to such applying voter the clerk shall identify the same by endorsing his name *and official title* on the back of the ballot, and in that case the election commissioner had appointed a Mrs. Thomas, who suggested two other women, Mrs. Neilsen and Mrs. Shumaker, and these three women simply signed their last names with "Mrs." in front of them on the back of the ballot, and did not sign the name of the election commissioner or his title. However, in the case of the 21 ballots now before us, Theo H. Berg's name was stamped and a deputy signed his name, and the only thing missing was his title, "City Clerk." While the statute is not strictly complied with, yet substantial compliance has been had, and we are inclined to overrule the objection to these 21 ballots for this reason.

In the envelope enclosing the ballot of Floyd D. Wilson, the notary's signature appears at the proper place, attesting that the voter subscribed the same in his presence and took oath thereto, but the notary entirely failed to fill out the certificate on the lower half of the envelope identifying the voter, and which he should have signed with his official title and impressed his seal thereon. There was no substantial compliance with the law, and the trial court was right in declaring that the ballot contained therein should not be counted.

We have examined all of the many other errors pointed out in these absent and disabled voters' ballots, but in our opinion some of these are but formal mistakes, perhaps a mere clerical and careless error, while the essential facts

required by law can still be ascertained, and we find no prejudicial errors therein. See *Hansen v. Lindley,* 152 Kan. 63, 102 Pac. 2d 1058.

It thus appears that, out of the 34 absentee and disabled voters' ballots, five of them were illegal and should not have been counted. There being 29 legal votes cast, how should the deduction of these five votes be made as between the contestant and contestee?

"In purging the polls of illegal votes, the general rule is that, unless it be shown for which candidate they were cast, they are to be deducted from the whole vote of the election division, and not from the candidate having the largest number. Of course, in the application of this rule such illegal votes would be deducted proportionately from both candidates, according to the entire vote returned for each." McCrary on Elections (4th ed.), sec. 495, p. 364.

"Where there are more ballots found in box than there are names on poll list, and the inspectors fail to draw from the box the excess before canvassing the votes, such extra ballots should, on a trial of the matter, be so apportioned that each candidate shall have deducted a share of them proportioned according to the whole number of votes received by him." *People ex rel. Williams v. Cicott,* 97 Am. Dec. 141 (16 Mich. 283). See, also, *Heyfron v. Mahoney,* 9 Mont. 497, 24 Pac. 93, 18 Am. St. Rep. 757; 10 Am. & Eng. Ency. of Law (2d ed.), 773.

Of the 34 ballots, several only voted on the school board election ballot, and others did not vote for any councilmen, so that out of the 34 ballots the contestant received 14 and the contestee received four votes.

Therefore, the contestant should bear the loss of 14/34 of the five illegal ballots, or 2 1/17 votes, leaving him 11 16/17 votes from these 34 ballots, and the contestee's loss is 4/34 of five votes, or 10/17 vote, leaving him 3 7/17 votes from these 34 ballots. Adding these votes to the votes in the 88 precincts, of 4,763 for the contestant and 4,764 for the contestee, gives the correct final vote of J. Lloyd McMaster, contestant, of 4,774 16/17, and of Rees Wilkinson, contestee, of 4,767 7/17.

It was the judgment of the trial court that the purported election of said Rees Wilkinson, contestee, as councilman of the city of Lincoln, as a result of the election held May 4, 1943, should be, and thereby was, set aside, annulled and held for naught, and that J. Lloyd McMaster, contestant, was duly elected to said position, and is entitled to all the rights and privileges of that office, and entitled to the term thereof for which he was elected on May 4, 1943, and that said Rees Wilkinson, contestee, shall pay the costs of the proceedings, and the sheriff is directed to oust from said office the contestee, and to put the contestant into possession of said office, and to deliver to him all the books and papers belonging to said office, all as provided in section 32-1036, Comp. St. 1929. This judgment of the district court is hereby affirmed.

AFFIRMED.