**CHUGACH ELECTRIC ASSOCIATION, Inc., Appellant,**

v.

**CITY OF ANCHORAGE, a municipal corporation, Appellee.**

**No. 1152.**

Supreme Court of Alaska.

Nov. 2, 1970.

William J. Moran, Anchorage, for appellant.

Karl L. Walter, Anchorage, for appellee.

Shirle A. Debenham, Asst. Atty. Gen., for the State of Alaska as Amicus Curiae.

Before DIMOND, RABINOWITZ, CONNOR, JJ., and TAYLOR and STEWART, Superior Court Judges.

CONNOR, Justice.

The factual aspects of this case are relatively simple and stand in stark contrast to the voluminous and far-reaching legal arguments which have been put forth by both parties.

Basically there is no dispute that the Park Lanes Bowling Alley was served with electrical power by the Anchorage City Utility Department, that the bowling alley requested Chugach Electric Association (hereafter referred to a Chugach) to provide service, that Chugach began constructing connecting lines to nearby, existing Chugach lines, and that the bowling alley is both within the city limits and within the service area of Chugach, as set forth in Chugach's state certificate of public convenience and necessity. The extension of service contemplated by Chugach was to cost in excess of $1,000; yet Chugach did not apply for a city building permit, which was required by city ordinance when more than $1,000 worth of work of this type was

done.[1] After starting the work Chugach did apply for a permit and it was refused. The refusal was based on a determination by a city officer that the existing facilities, those of the city, were adequate to serve the area. This was tantamount to determining that the public convenience and necessity would not be served by the granting of the permit. The city obtained a permanent injunction which prohibits Chugach from serving the bowling alley. Chugach has appealed from this granting of an injunction and claims that the city has no power to stop it from serving the bowling alley.

Although a battery of arguments has been offered by each side to this dispute, there are basically only two questions on this appeal: Was an injunction the proper remedy to enforce a criminal ordinance? May the city validly deny Chugach permission to serve the bowling alley? Because a resolution of the second issue will necessarily dispose of this case, we need not address our attention to the first issue.

The problem simply stated is this: Chugach has been requested by Park Lanes, a member of the Chugach cooperative that is presently being served by the city, to provide Park Lanes with electric utility service. The city maintains that Chugach must comply with its ordinance which requires the obtaining of a permit prior to commencing work of the nature of that contemplated by Chugach. Chugach responds by pointing out to the city that only the Public Service Commission has the power to prohibit it from extending its service, that the PSC has already issued a certificate of public convenience and necessity and, therefore, it is unnecessary for it to obtain a permit from the city.

At the centre of this electrical storm are several constitutional provisions, a handful of statutes, and a city ordinance.[2] There is no dispute over the fact that appellant

---

1. Anchorage Code of Ordinances, Sec. 9–26.8, provided at relevant times:
   "This division shall not apply to: * * (c) Minor upkeep, replacements, or improvements of existing services, activities and facilities, or those constructed, performed, or permitted pursuant to permit provided by this division when the total cost of the replacement or improvement does not exceed one thousand dollars ($1,000.00)."

2. Alaska Const. art. X, § 1, provides:
   "*Purpose and Construction.* The purpose of this article is to provide for maximum local self-government with a minimum of local government units, and to prevent duplication of tax-levying jurisdictions. A liberal construction shall be given to the powers of local government units."
   Alaska Const. art. X, § 2, provides:
   "*Local Government Powers.* All local government powers shall be vested in boroughs and cities. The State may delegate taxing powers to organized boroughs and cities only."
   Alaska Const. art. X, § 7, provides:
   "*Cities.* Cities shall be incorporated in a manner prescribed by law, and shall be a part of the borough in which they are located. Cities shall have the powers and functions conferred by law or charter. They may be merged, consolidated, classified, reclassified, or dissolved in the manner provided by law."

Alaska Const. art. X, § 11, provides:
   "*Home Rule Powers.* A home rule borough or city may exercise all legislative powers not prohibited by law or by charter."

AS 10.25.010 provides:
   "*Powers of electric or telephone cooperative.* An electric or telephone cooperative may * * * (7) construct, maintain, and operate electric transmission and distribution lines, or telephone lines along, upon, under and across publicly owned lands and public thoroughfares, including, without limitation, all roads, highways, streets, alleys, bridges and causeways * * * (13) do and perform any other act and thing, and have and exercise any other power which may be necessary, convenient or appropriate to accomplish the purpose for which the cooperative is organized."

AS 10.25.620 provides:
   "*Chapter extended to existing cooperatives.* This chapter applies to all nonprofit cooperatives organized under any other law of the state for the purpose of supplying electric energy and power, or telephone service, to its members, or for the purpose of promoting and extending the use of electric energy and power, or telephone service. These cooperatives are subject to this chapter as if originally organized under it."

Chugach has been certified to serve in an area within the corporate limits of the city, nor the fact that Park Lanes is within said corporate limits. The argument is this: Having established that the State of Alaska, through the Public Service Commission, has determined that the public convenience and necessity requires that appellant be allowed to furnish electric utility service in an area which includes part of the city, can the city short-circuit this determination by refusing to issue a permit as required by its ordinance?

Because of the nature of the legal issues raised, each party to this dispute has attempted to create a fine filament of argument in support of its position, plugging in the various statutes and constitutional provisions where relevant. Because of the interplay of the arguments, it is not completely possible to follow the thrust of some of the points made. We have, nevertheless, attempted to resolve some of the minor issues raised, as well as disposing of the problem which is central to this appeal.

■ Appellant argues that although this court has interpreted the Alaska Constitution as establishing a broad base upon which to erect a municipal code,[3] the power of home rule cities is not without limitation.

AS 29.05.010 provides:
"*Home rule cities.* A 'home rule city' is a city of the first class which has adopted a home rule charter pursuant to the constitution."

AS 29.05.020 provides:
"*Legislative powers of home rule cities.* A home rule city has all legislative powers not prohibited by law or charter."

AS 29.10.201 provides:
"*General police powers.* The council may take other action by ordinance, resolution or otherwise as may be necessary to protect and preserve the lives, the health, the safety and the well-being of the people of the city."

AS 42.05.193 provides:
"*Certificate of convenience and necessity.* No public utility shall operate after January 1, 1964, without first having obtained from the commission under this chapter a certificate declaring that public convenience and necessity require or will require the operation and delineating of the area where service is to be provided."

AS 42.05.390 provides:
"*Additions and expansions of the public utilities.* Additional construction or improvements which may be the basis of a rate adjustment shall be reported to the commission. If the commission finds that the construction or improvements are reasonably necessary, or if the report of the construction or improvements is accompanied by the certification of a registered engineer that the construction is necessary to provide adequate public service, the cost of the construction or improvements shall be considered in making evaluations for rate purposes."

AS 42.05.620 provides:
"*Local control of public utilities.* Nothing in this chapter shall be interpreted to limit the power of a municipality, public utility district or other local authority to regulate and control, in the manner and to the extent provided by law, a public utility not otherwise subject to the provisions of this chapter."

AS 42.05.640 provides in part:
"(4) 'service' is used in the broadest and most inclusive sense and includes the use or accommodation given to consumers or patrons, any product or commodity furnished by a utility and the plant, equipment, apparatus, appliances, property, and facility employed by a utility in performing or providing service, or in furnishing a product or commodity and devoted to the purposes in which the utility is engaged and to the use and accommodation of the public."

Anchorage Code of Ordinances, Section 9–26 provides:
"No person, association or corporation supplying electrical energy through power lines, hereinafter called the 'supplier', shall permit or allow any person, association or corporation, hereinafter called the 'consumer', to consume electrical energy or make any service connections to such supply of energy, or permit construction of facilities to supply said consumer, or make any alterations in existing facilities within the city, except on written permit issued by the city, or under such exceptions as may hereinafter be made." (Ord. No. 1447, § 1, 9–27–60.)

3. Lien v. City of Ketchikan, 383 P.2d 721 (Alaska 1963); Maier v. City of Ketchikan, 403 P.2d 34 (Alaska 1965).

Chugach directs our attention to AS 29.08.-010, AS 29.08.013, and AS 29.08.200 as specific instances in which the legislature has imposed limitations on the powers of home rule cities,[4] and argues further that the legislature has preempted the field in which the city has attempted to exert regulation in the case before us. But because the legislature has created such limitations on home rule powers, it does not follow that the state, under entirely different statutory provisions, has necessarily divested the city of all or part of its power to regulate Chugach. Our decision in this case does not hinge on the fact that these other limitations have been created by statute.[5]

Appellant argues that because of the city's own charter, the city is without power to regulate it.[6] This assumes an answer to the problem before it has been resolved. The very issue in this case is whether the state has implicitly carved out an area that is out of bounds to the city. If, in fact, such a prohibition has occurred, it matters little that the charter merely mirrors what is already stated in article X, section 11, of the Alaska Constitution, to the effect that a "home rule borough or city may exercise all legislative powers not prohibited by law * * *." Consequently, the charter provision sheds no light upon the problem.

A problem of minor importance involves the status of appellant. City has admitted that Chugach is indeed a "public utility" as defined in the Alaska Public Service Commission Act,[7] but denies that appellant is an Alaska nonprofit electric cooperative corporation subject to the Electric and Telephone Cooperative Act.[8] The trial

4. AS 29.08.010 states in part:
   "*Limit on home rule taxing power.* (a) AS 29.10.336, which limits taxing power, applies to home rule cities."
   AS 29.08.013 states:
   "*Limit on power to govern use and operation of motor vehicles.* AS 29.10.171 (a), relating to power to govern the use and operation of motor vehicles, applies to home rule cities."
   AS 29.08.200 states in part:
   "*Limit on home rule power to punish ordinance violations.* (a) A home rule city may not impose criminal penalties for the violation of a general ordinance unless the ordinance is codified and copies of the ordinance are made available for distribution to the public."

5. Nor is the court unaware that polarization possibly exists between our ruling in Lien v. City of Ketchikan, 383 P.2d 721 (Alaska 1963), which held that a home rule city derives its powers from its charter rather than any legislative acts, and our holding in Chugach Electric Association v. City of Anchorage, 426 P.2d 1001 (Alaska 1967) which determined that AS 29.10.135(b) conferred a power on Anchorage, a charter city. This very narrow issue is not before us and we need not now decide it.

6. The pertinent Anchorage City Charter sections provide as follows:
   Sec. 1.4 * * *. "The city may exercise all legislative powers not prohibited by law or by this charter."

Sec. 1.5 * * *. "Except as otherwise specifically defined herein or indicated by the context, words used in this charter shall have their ordinary, dictionary meanings * * *. (g) 'By law' as used in this charter denotes applicable federal law, the Constitution and statutes of Alaska, the applicable common law, and this charter."

7. AS 42.05.640 provides in part:
   "*Definitions.* In this chapter (1) 'commission' means the Public Service Commission; (2) 'public utility' or 'utility' includes every corporation, whether public, cooperative, or otherwise, company, individual, or association of individuals, their lessees, trustees, or receivers appointed by a court, that owns, operates, manages, or controls any plant, pipeline, or system for (A) the generation, transmission, or distribution of electric energy and power, or the furnishing of telephone or telegraph communications, any of which produce an annual gross income in excess of $25,-000; * * *."

8. AS 10.25.380 provides as follows:
   "*Nonprofit operation.* A cooperative shall be operated on a nonprofit basis for the mutual benefit of its members and patrons. The bylaws of a cooperative or its contracts with members and patrons shall contain such provisions relating to the disposition of revenues and receipts as may be necessary and appropriate to establish and maintain its nonprofit and cooperative character."

court found that appellant "is a rural electric cooperative," and it also appears this issue was determined in the action entitled In re 1960 Delinquent Real Property Taxes and Assessments in City of Anchorage, Superior Court, Third Judicial District, No. 61–1662 (9/21/64). However, the matter may remain static and undetermined on this appeal, since our disposition of this case does not require application of AS 10.-25.

The court below found that appellant's facilities were not authorized by permit and constituted a nuisance and encroachment upon public rights-of-way. Chugach argues that pursuant to AS 10.25.010,[9] which grants to cooperatives the right to construct transmission lines across publicly owned lands, no such finding should have been entered. Because this narrow issue will not aid us in our disposition of this case, and

because the state legislature has recently directed its attention to this problem, we decline to rule upon this point.[10]

In generating its counterarguments, the city claims that under any circumstances, municipalities are exempt from control by the PSC, due to its limited power. Here, also, the state legislature has recently spoken on this matter.[11] Because neither the briefs nor oral argument were directed to the new act, we will make no determination of this issue.

■ Respondent points out that under AS 42.05.390,[12] the legislature has granted only limited authority to the PSC where matters of additional construction, improvements or extensions of service are involved. We cannot read the statute so narrowly. AS 42.05.193 [13] provides that public utilities, other than those owned and operat-

9. Supra note 2.

10. AS 42.05.251, added by SLA 1970, ch. 113 § 6, provides as follows:
"*Use of Streets in Cities and Boroughs.* Public utilities have the right to a permit to use public streets, alleys and other public ways of a city or borough, *whether home rule or otherwise,* upon payment of a reasonable permit fee and on reasonable terms and conditions and with reasonable exceptions the city or borough requires. A dispute as to whether fees, terms, conditions or exceptions are reasonable shall be decided by the commission. The commission may require a utility to add the amount of any permit fee paid as a pro rata surcharge to its bills for service rendered at locations within the boundaries of any city or borough which requires payment of a permit fee." (Emphasis supplied.)

11. AS 42.05.221(d), added by SLA 1970, ch. 113 § 6, provides as follows:
"In an area where the commission determines that two or more public utilities are competing to furnish identical utility service and that this competition is not in the public interest, the commission shall take appropriate action to eliminate such competition and any undesirable duplication of facilities. Such appropriate action may include,

but is not limited to, ordering the competing utilities to enter into a contract which, among other things would:
(1) delineate the service area boundaries of each in those areas of competition;
(2) eliminate existing duplication and paralleling to the fullest reasonable extent;
(3) preclude future duplication and paralleling;
(4) provide for the exchange of customers and facilities for the purposes of providing better public service and of eliminating duplication and paralleling; and
(5) provide such other mutually equitable arrangements as would be in the public interest."
The above quoted section is subject to qualification by AS 42.05.711(b), added by SLA 1970, ch. 113 § 6, as follows:
"Public utilities owned and operated by a political subdivision of the state and none of whose utilities is in competition with any other utility, are exempt from the provisions of this chapter, other than the provisions of §§ 211–281 of this chapter, unless such an owner and operator elects to be subject to all provisions of this chapter."

12. Supra note 2.

13. Supra note 2.

ed by a municipality,[14] must obtain certificates of convenience and necessity before they may provide services within a given area. AS 42.05.640 [15] defines "service" as: "used in the broadest and most inclusive sense and includes the use or accommodation given to consumers or patrons, * * *" As such, this extension of services should be accorded Chugach on the basis of its having obtained a certificate of convenience and necessity for the area wherein Park Lanes is located.

■ In stating its resistance to the argument that the state has preempted in the area of regulation at issue because the state has "occupied the field," the city cites Antieau [16] for the proposition that courts should not entertain such a theory as a resolution to problems of this type. Although we are impressed by Antieau's argument,[17] we cannot adopt the narrow alternative to this approach suggested by city, namely, that each piece of legislation that restricts the powers of home rule cities should be specifically labeled as so doing. We think this would place an unwarranted burden upon the state legislature and would accomplish very little. Furthermore, it is not for the court to direct the legislature as to the form it uses in enacting the laws of our state. Accordingly, we find it unnecessary for the legislature to spell out the supposed effect of its legislation each time it produces a new bill.

■ We have finally reached the question which goes to the very nucleus of the problem: Can the city limit the operations of Chugach by denying it a permit to extend its services? We have come to the conclusion that the city ordinance must yield to the PSC determination that appellant may operate within the certified service area. The ability of a municipality to subvert the judgment of the PSC that the public convenience and necessity require an electrical supplier to furnish electricity, even within the corporate limits of that municipality, would severely impair the proper functioning of the commission. Because the legislature has not spoken of this problem in terms applicable to this particular case,[18] it becomes the responsibility of

14. AS 42.05.645 provides in part:
   "*Application of chapter.* This chapter does not apply to * * * (2) a municipally owned and operated utility; * * *"
   Apparently any uncertainty in determining the scope of the operations of public utilities will be eliminated by enactment of recent legislation by the state. AS 42.05.221, added by SLA 1970, ch. 113 § 6, states in part that:
   "(a) No public utility may operate and receive compensation for providing a commodity or service after January 1, 1971 without first having obtained from the commission under this chapter a certificate declaring that public convenience and necessity require or will require the service. * * * A certificate shall describe the nature and extent of the authority granted therein, including as appropriate for the services involved, a description of the authorized area or areas and scope of operations of the public utility."

15. Supra note 2.

16. 1 C. Antieau, Municipal Corporation Law 292.38 (1968) states:
   "It is the conclusion of the author that the occupation of the field doctrine should be discarded. If the matter is a general one in a home-rule state, or any kind elsewhere, the legislature can prevent further municipal regulations by simply indicating its wish. In the absence of such specific indication of the legislative intent the judiciary would be well advised to avoid invalidating municipal ordinances upon inquiries into the legislative psyche. The doctrine may provide a too handy prop for invalidating municipal rules with which jurists are unsympathetic. One cannot help but notice how avidly courts invalidate municipal regulations in one 'field' on the theory that it has been occupied, while condoning considerable complementary regulation in another. Since it is practically impossible for either municipal attorney or private counselor to determine in advance what is the 'field' and to forecast whether one has been 'occupied' the doctrine is unserviceable to the bar."

17. Rubey v. City of Fairbanks, 456 P.2d 470 (Alaska 1969).

18. The state legislature has recently expanded the laws governing the regulation of public utilities. These new laws do not, however, affect the present action,

this court to resolve this problem in a manner which comports with our understanding of the present laws of this state.[19]

The ordinance involved [20] provided in effect that no supplier could provide a customer with electric power, if the providing of the service required an expenditure of monies in excess of $1,000.[21] In conflict with this ordinance are numerous statutes [22] which invest in the Public Service Commission the power to regulate, to an extent permitted by law, the transmission of electric current. At the outset it should be made clear that we approach a resolution to this problem by construing it as a conflict between the application of the municipal ordinance and the pertinent state statutes which vest power in the PSC, rather than a situation where the state has implicitly preempted the entire field. For this reason, our opinion today in no way clashes with our holding in Rubey v. City of Fairbanks,[23] 456 P.2d 470 (Alaska 1969). Nor do we consider our holding inconsistent with other rulings of this court which established guidelines for the regulation of public and municipal utilities.[24] Rather,

---

since the new bill did not take effect until July 1, 1970. The pertinent provisions are as follows:

AS 42.05.221, added by SLA 1970, ch. 113 § 6:

> "*Certificates required.* (a) No public utility may operate and receive compensation for providing a commodity or service after January 1, 1971 without first having obtained from the commission under this chapter a certificate declaring that public convenience and necessity require or will require the service. Where a public utility provides more than one type of utility service, a separate certificate of convenience and necessity shall be required for each type. *A certificate shall describe the nature and extent of the authority granted therein, including as appropriate for the services involved, a description of the authorized area or areas and scope of operations of the public utility.*" (Emphasis supplied.)

See supra note 11. An interpretation of this new bill will not be attempted. No inferences should be drawn about this court's posture toward the new legislation on the basis of our holding in this case. Any such determination would require the careful consideration of arguments presented in a full adversary proceeding.

19. A concise statement of the problem confronting the court is set out in Note, Conflicts Between State Statutes and Municipal Ordinances, 72 Harv.L.Rev. 737, 747 (1959):

> "There is within a municipality no political pressure to check the enactment of ordinances adverse to the interest of the state, and, if the state legislature is unwilling or unable to preclude municipal enactments, the judiciary is the only available protector of the state's interests."

20. Supra note 2.

21. Supra note 1.

22. Supra note 2.

23. In Rubey, the City of Fairbanks had made assignation a crime, although there was no analogous state law. The argument was made that since the state had enacted a comprehensive scheme enumerating acts which were criminal and corresponding sanctions, this indicated implicitly a legislative intent to preempt in the field of regulation of sexual conduct. We held that the State of Alaska did not endorse a theory of implicit state preemption, even though there was a comprehensive coverage of such criminal acts by the state. In so doing, we rejected the California approach as set forth in In re Lane, 58 Cal.2d 99, 22 Cal.Rptr. 857, 372 P.2d 897 (1962). Lane held that the state had not made simple fornication or adultery a crime, that it had preempted the entire area of sexual conduct regulation and, consequently, that portion of a municipal ordinance that attempted to regulate adultery was invalid. In the instant case, the state legislature has enacted numerous laws in the area of control of public utilities. Not only do these laws deal with methods and scope of regulation, they provide for the creation of a special agency, the Public Service Commission, to implement and administer these laws and underlying policies. It is unnecessary to find state preemption in order to solve the present problem.

24. In Homer Electric Association, Inc. v. City of Kenai, 423 P.2d 285 (Alaska 1967), this court held that a state certificate granted to a private power company did not grant an exclusive monopoly to service the residents located within a city, which had its own municipal utility department.

the question before us is one of first impression: May the city create its own monopoly by simply refusing to grant Chugach a permit as it requires by ordinance?

Although the powers of home rule cities vary depending upon the bases for the grants of such power,[25] conflicts between state statutes and municipal ordinances generally have been modulated by ruling in favor of the statutes. Many state courts, while not clearly enunciating the bases for their holdings, have in fact followed a rule which for the sake of convenience can be referred to as the "local activity rule."[26]

This rule was not born of a need to preclude municipal legislation when the state has preempted an entire area of law. Instead, it is merely an expedient method for resolving an impasse between state statutes which seek to further a specific policy and municipal ordinances which either directly or collaterally impede this implementation.

In considering the case before us, we feel that this rule will adequately serve to eliminate the existing friction between our state statutes vesting power in the PSC and the city's ordinance. Here, the activity sought to be regulated is unquestionably of a state-wide concern—the denomination of service areas wherein a public utility may operate. Even assuming some doubt as to a correct characterization of the activity,

In Chugach Electric Association v. City of Anchorage, 426 P.2d 1001 (Alaska 1967), we determined that even though the Public Service Commission had issued a certificate of convenience and necessity to Chugach Electric Association, this was not in effect a grant of a monopoly to Chugach to provide services in areas outside but immediately contiguous and adjacent to the city of Anchorage. We also concluded that, based upon our study of the legislative history of the Alaska Public Service Commission Act (AS 42.05.010–AS 42.05.650), municipally owned and operated utilities were intended to be excluded from the act's coverage. In light of recent legislation, this may no longer be a correct interpretation of the PSC Act as amended. See supra note 11.

25. The basis for a home rule charter may be either a constitutional grant of authority, Carlberg v. Metcalf, 120 Neb. 481, 234 N.W. 87 (1930), a general law enacted by the state legislature, City of Kalamazoo v. Titus, 208 Mich. 252, 175 N.W. 480 (1919), or a combination of both.

26. A typical case is Kansas City, Mo. v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S.W.2d 195 (Mo.1935), involving taxation. A home rule city, chartered under the state constitution, was held to lack the necessary authority to tax where the state legislature had passed an act in conflict with the city ordinance. In striking down the ordinance, the court stated:

"[I]n matters which are governmental functions, the state retains control and, as to such matters, the provisions of a city charter, although adopted under the constitutional provisions therefor, must be and remain consistent with and subject to the statutes of the state enacted by the Legislature."—87 S.W.2d at 202 (citation omitted).

See also Strode v. Sullivan, 72 Ariz. 360, 236 P.2d 48 (1951) (held, matter of municipal elections is of local concern and provisions of charter supersede all laws of state in conflict therewith); Heubeck v. City of Baltimore, 205 Md. 203, 107 A.2d 99 (Md.Ct.App.1954) (provision in constitution which empowered home rule city prescribed that general laws would prevail over city ordinances); City of Kalamazoo v. Titus, 208 Mich. 252, 175 N.W. 480 (1919) (home rule power derived from public act rather than constitution; court looked to local nature of activity sought to be regulated in reconciling ordinance and state statute); Carlberg v. Metcalf, 120 Neb. 481, 234 N.W. 87 (1930) (home rule city deriving power from constitution; held, state statute prevails when activity not of local concern); State ex rel. Cozart v. Carran, 133 Ohio St. 50, 11 N.E.2d 245 (1937) (home rule power deriving from state constitution limited to regulating local matters not in conflict with general laws). For more recent refinements of this rule, see generally Englewood v. Mountain States Tel. and Tel. Co., 163 Colo. 400, 431 P.2d 40 (1967); Square Deal Coal Haulers and Yardmen's Club, Inc. v. City of Cleveland, 176 N.E.2d 348 (Ohio C.P.1961); City of Akron v. Williams, 172 N.E.2d 28 (Ohio Mun.Ct.1960); Neapolitan v. U. S. Steel Corp., 149 N.E. 2d 589 (Ohio Ct.App.1956).

we would be inclined to rule in favor of the legislative authority of the state. Abbot v. City of Los Angeles, 53 Cal.2d 674, 3 Cal.Rptr. 158, 349 P.2d 974 (1960). This does not mean that the city of Anchorage is without jurisdiction to charge Chugach with the responsibility of meeting reasonable standards of construction, limiting its joint use of public ways so as not to unduly restrict their utility, obtaining and filing plans, and providing the city with other information to allow for the proper administration of municipal police powers. It is only that part of the ordinance which is applied inconsistently with our state laws that must yield. United Advertising Corp. v. Borough of Raritan, 11 N.J. 144, 93 A.2d 362 (1952). It means, simply, that the city may not deny Chugach the right to provide the electrical service requested by Park Lanes.

The statutes involved herein,[27] while not evincing a clear manifestation of intent to occupy the entire field of public utility regulation, certainly demonstrate a strong policy in favor of treating such regulation as a matter of state-wide concern. The type of service provided and the area wherein it shall be provided are the subjects of specific statutory provisions. On the basis of these laws, the Public Service Commission has concluded that it will best serve the needs of the public if Chugach is allowed to provide service in a given area. This determination should not be allowed to miscarry because the city of Anchorage withholds a permit.

Our holding attempts to comport with the current trend of authority in dealing with problems of this nature.[28] It also seeks to balance the needs of the entire state against the desirable autonomy which only home rule can provide. We find that the scales tip heavily in favor of the state. Accordingly, the city ordinance cannot stand.

The decision of the court below is reversed and the case is remanded with instructions to dissolve the permanent injunction.

BONEY, C. J., not participating.

27. Supra note 2.

28. Note, Conflicts Between State Statutes and Municipal Ordinances, 72 Harv.L. Rev. 737 (1959).