*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKA TRAPPERS ASSOCIATION, INC. and NATIONAL TRAPPERS ASSOCIATION, INC., | ) ) ) ) ) | Supreme Court No. S-18189 Superior Court No. 3VA-20-00015 CI |
| Appellants, | ) ) | O P I N I O N |
| v. | ) ) | No. 7699 – May 10, 2024 |
| CITY OF VALDEZ, | ) ) | |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Valdez, Rachel Ahrens, Judge.

Appearances: Zane D. Wilson and A. René Broker, CSG, Inc., Fairbanks, and Gary R. Leistico, Leistico & Esch, PLLC, St. Cloud, Minnesota, for Appellants. Jon S. Wakeland, Robin O. Brena, and Jake W. Staser, Brena, Bell & Walker, P.C., Anchorage, for Appellee. Kneeland Taylor, Law Office of Kneeland Taylor P.C., Anchorage, for Amicus Curiae Alaska Wildlife Alliance, Inc. Cheryl R. Brooking, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Amicus Curiae State of Alaska.

Before: Winfree, Chief Justice, and Maassen, Carney, Borghesan, and Henderson, Justices.

CARNEY, Justice.

# I. INTRODUCTION

State and national fur trappers associations challenged a city ordinance that limited trapping in certain areas, arguing that it was prohibited by Alaska law. We affirm the superior court's order granting summary judgment to the city. We take this opportunity to reaffirm that whether a local ordinance conflicts with state law and is therefore invalid depends upon whether the ordinance has been expressly or impliedly prohibited.

# II. FACTS AND PROCEEDINGS

## A. Facts

In 2005 the City of Valdez enacted Valdez Municipal Code (VMC) Chapter 9.38 to regulate animal trapping within its limits. The ordinance generally allows trapping for both recreational and subsistence purposes within the Valdez city limits, but it bars trapping in the Valdez duck flats, portions of Mineral Creek Canyon, all areas northeast of the Richardson Highway from Airport Road to the Glacier Stream Bridge, and Mineral Creek State Park,[1] and within one-half mile of occupied subdivisions[2] or 500 feet of any road[3] and certain trails.[4] Violators of the ordinance are subject to a minimum fine of $50 and a mandatory court appearance.[5] The ordinance's stated purpose is to "enact land use regulations" to protect "all persons from hazardous devices and to protect domesticated animals and pets from damage and destruction which may result from uncontrolled trapping activities."[6] The ordinance authorizes the

---

[1]     VMC 09.38.030(B), (C), (D).

[2]     VMC 09.38.030(A).

[3]     VMC 09.38.030(B). The 500 feet restriction does not apply to "bridges and culverts outside the downtown area and past the duck flats."

[4]     VMC 09.38.030(C).

[5]     VMC 09.38.050.

[6]     VMC 09.38.010.

chief of police to allow trapping within restricted areas as deemed necessary to protect public health and safety.[7]  Although the suit was originally brought regarding the 2005 version of the ordinance, the substantive issues the superior court ruled upon at summary judgment related to the 2020 version of the ordinance.  We therefore consider that version of the ordinance.

**B.	Proceedings**

The Alaska Trappers Association and the National Trappers Association (Trappers) filed a complaint challenging the ordinance in February 2020.  They alleged that Valdez's trapping ordinance is "invalid and unconstitutional."  They argued that VMC 9.38 is preempted by state law, that Valdez violates AS 16.05.790 by "interfering with trapping activity conducted in compliance with applicable state and federal law," and that VMC 9.38 was "not promulgated in compliance with" article VIII, sections 1, 2, 3, 4, 6, and 7 of the Alaska Constitution.  The Trappers argued that AS 16.20.010 "specifically asserted [the State's] jurisdiction over all fish and game in the State except in those areas where it has assented to federal control," and that Valdez's trapping ordinance operated as an improper veto of a state determination.  They asked the superior court to declare that the Alaska Constitution and statutes impliedly preempt municipal regulation of trapping and that the ordinance violates AS 16.05.790 and article VIII of the Alaska Constitution.

Valdez answered, asserting that it had "constitutional authority" and a "statutory right" to promulgate VMC 9.38.  Valdez argued that its power to regulate land use under article X, section 11 of the Alaska Constitution and AS 29.35.260(c)

---

**7**	VMC 09.38.040 (providing examples of exceptions, including for government employees required to trap animals for authorized purposes, scientists identifying and studying wildlife for scientific purposes, and persons with specific animal nuisance problems).

authorized it, as a home rule municipality, to enact the trapping limitations on municipal land.

The parties filed cross-motions for summary judgment. The Trappers argued that the legislature had not delegated any authority to Valdez to regulate trapping and had "instead vested its authority solely with the State of Alaska Board of Game and the Commissioner of Fish and Game." They argued further that "[e]ven if [Valdez] had some authority to regulate trapping," it could not "adopt ordinances that override State law and regulations."

Valdez argued that its ordinance was presumed to be "a valid and constitutional exercise of municipal authority." It asserted that its authority to regulate land use and public safety had not been restricted or prohibited to prevent it from limiting trapping for those purposes. Valdez also asserted that it had authority to enact local ordinances that were in conflict with state law as long as its exercise of authority had not been either expressly or impliedly prohibited by state law.

The superior court held oral argument in December 2020. The Trappers argued that VMC 9.38 is impliedly preempted by state law and regulations because it is substantially irreconcilable with AS 16.05.790 and 5 Alaska Administrative Code (AAC) 84.260 and .270, citing the test laid out in *Jefferson v. State*.[8] They also argued that authority over fish and game belongs to the Board, comparing it to our discussion of the Department of Natural Resources' (DNR) broad power to regulate mining in *Jacko v. State*[9] and suggesting the ordinance was an improper veto of a state determination that the area should be open to trapping. Finally, they argued that even if Valdez had authority to regulate trapping, VMC 9.38 should still be invalidated

---

[8]     527 P.2d 37, 43 (Alaska 1974).

[9]     353 P.3d 337, 343-44 (Alaska 2015).

because Valdez failed to comply with certain constitutional principles and should have brought a proposal to the Board rather than passing the ordinance itself.

Valdez argued that there was no evidence that the ordinance actually impeded trapping in Valdez or that the Trappers had made any attempt to provide public input when the ordinance was passed. It argued that it could not ask the Board to implement a regulation addressing its safety concerns because the Board does not have authority to address public safety.[10] Valdez emphasized that the Board's mandate is to "conserve and promote the use of game resources," but the city has the authority and responsibility to protect the health and public safety of its citizens, as it had done by passing the ordinance. Finally, Valdez cited a booklet prepared by the Alaska Department of Fish and Game (ADFG) summarizing state trapping regulations.[11] It pointed out that in this booklet ADFG specifically advised trappers to be aware of local ordinances and therefore argued that the State contemplated that the ordinance could coexist with trapping.[12]

---

[10] Valdez asserted that the Board failed to seriously consider two recent proposals from local citizens' advisory boards to close certain areas to trapping. The first was a 2019 Skagway ordinance to create a buffer around homes and certain roads that the Board debated for three minutes before unanimously rejecting. Audio tape: Alaska Board of Game, Southeast Region Meeting, at 10:50:00 AM - 10:53:36 AM (Jan. 14, 2019), https://www.adfg.alaska.gov/static/regulations/regprocess/gameboard/swf/2018-2019/20190111_janse/index.html?mediaBasePath=/Meeting%2001-14-19%20BOG%20%28Jan-18-19%209-58-54%20AM%29#. The second was a 2020 proposal to create a one-mile buffer around homes and cabins in the Interior/Eastern Arctic region that the Board unanimously rejected after a five-minute discussion. Audio tape: Alaska Board of Game, Interior and Eastern Arctic Region Meeting, at 4:03:03 PM - 4:08:40 PM (March 9, 2020), https://www.adfg.alaska.gov/static/regulations/regprocess/gameboard/swf/2019-2020/bog_iea_2020/index.html#.

[11] *See* STATE OF ALASKA, DEPARTMENT OF FISH AND GAME, 2020-2021 Alaska Trapping Regulations, No. 61.

[12] *See id.* at 6; *see also* 5 AAC 84.260 ("It is lawful to trap a furbearer only in a game management unit or a portion of a unit open to trapping in accordance with the open season and bag limit prescribed in 5 AAC 84.270.").

The court granted summary judgment to Valdez and denied the Trappers' motion. It concluded that the legislature's delegation of authority to the Board was limited and thus did not grant the Board exclusive control of trapping. Turning to the Trappers' constitutional argument, the court determined that article VIII stated only a directive that the legislature act in the area of natural resources but did not preclude the legislature from delegating its authority or prevent municipalities from acting in that area. The court noted that the presumption of constitutionality afforded to municipal ordinances further supported its conclusion. Finally, the court determined that the ordinance did not directly contradict state regulations because the regulations themselves amounted to a prohibition on trapping outside specific areas rather than "an affirmative opening" of all other land in Alaska to trapping.

The Trappers moved for reconsideration. They asserted that the superior court failed to address their argument that the ordinance was invalid because Valdez did not apply the sustained yield principle required by article VIII, section 4 of the Alaska Constitution. At the court's invitation,[13] Valdez responded that municipalities have no authority to impede a statewide policy of sustained yield and are not required to make decisions based on the sustained yield principle themselves. Valdez argued further that it was merely enacting a public safety and land use ordinance, not managing the taking of game, so it was not required to consider sustained yield when it enacted VMC 9.38. The superior court denied the motion to reconsider.

The State moved to intervene just over a month after the court granted summary judgment. The motion was denied as untimely and because it would prejudice Valdez. The court noted that the State had not explained why it waited more than a year after the complaint was filed to seek intervention or pointed to any changed circumstance that would explain its present need to intervene. The court rejected the

---

[13]     *See* Alaska R. Civ. P. 77(k)(3) ("No response shall be made to a motion for reconsideration unless requested by the court . . . .").

State's argument that the court's decision would impair the State's interest. The court observed that even if the State has a general interest in cases regarding the enforcement of state laws, it had already held that Valdez's ordinance did not conflict with state laws or regulations, thus resolving whether it impaired the State's interest in wildlife management. The court noted that the State could assert its interest by filing its own suit against Valdez to challenge the ordinance or seeking amicus curiae status.[14] The court also noted that allowing the State to intervene would prejudice Valdez by subjecting it to the costs and delay of a repetitive round of briefing and arguments on the same issues. The State filed a motion to reconsider, which the court denied.

The Trappers appealed. The State filed an amicus curiae brief in support of the Trappers' position, and the Alaska Wildlife Alliance filed an amicus curiae brief in support of Valdez.

## III. STANDARD OF REVIEW

Municipal ordinances enjoy a presumption of constitutionality and we "construe enactments to avoid a finding of unconstitutionality to the extent possible."[15] We review questions of law, constitutional interpretation, and statutory interpretation de novo, applying our independent judgment and adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[16]

---

[14] *See Mat-Su Reg'l Med. Ctr., LLC v. Burkhead*, 225 P.3d 1097, 1106 (Alaska 2010) (concluding if potential intervenor raises no new issues, "the most effective and expeditious way to participate is by a brief of amicus curiae and not by intervention" (quoting *State v. Weidner*, 684 P.2d 103, 114 (Alaska 1984))).

[15] *Fraternal Ord. of Eagles v. City & Borough of Juneau*, 254 P.3d 348, 352 (Alaska 2011) (quoting *Treacy v. Mun. of Anchorage*, 91 P.3d 252, 260 (Alaska 2004)).

[16] *City of Valdez v. State*, 372 P.3d 240, 246 (Alaska 2016) (quoting *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 73 (Alaska 2013)).

## IV. DISCUSSION

The Trappers argue that because the Alaska Constitution declares the legislature shall "provide for natural resource management," the State enjoys "pervasive state authority" over natural resources, and as a result, municipal ordinances that affect natural resources are "directly at odds" with the constitutional assignment to the legislature.[17] Valdez responds that a municipal ordinance is prohibited by state law only when it "seriously impedes implementation of [a] statewide legislative policy"[18] and is "so substantially irreconcilable that one cannot be given its substantive effect if the other is to be accorded the weight of law."[19] The Trappers assert that whether there is pervasive state authority over a subject matter is a "separate" preemption test that "applies when a municipality acts in a field where Alaska's constitution grants the State 'pervasive control.' "

We conclude that VMC 9.38 is not prohibited by the Alaska Constitution or the legislature's delegation of authority over fish and game to the Board, and we affirm the superior court's grant of summary judgment to Valdez. Before turning to the parties' arguments, we review the constitution's assignment of authority to the State and to municipalities.

### A. Legal Background.

#### 1. A home rule municipality's broad powers may be limited by either express or implied prohibition.

Article X, section 11 of the Alaska Constitution authorizes home rule municipalities to "exercise all legislative powers not prohibited by law or by charter." The legislature "must so state" if it wishes to exert exclusive control over a policy

---

[17] *See* Alaska Const. art. VIII, § 2 ("The legislature shall provide for the utilization, development, and conservation of all natural resources belonging to the State, including land and waters, for the maximum benefit of its people.").

[18] *Johnson v. City of Fairbanks*, 583 P.2d 181, 187 (Alaska 1978).

[19] *Jefferson v. State*, 527 P.2d 37, 43 (Alaska 1974).

field.[20]  As a consequence of this strong preference for local control, a "municipal ordinance is not necessarily invalid in Alaska because it is inconsistent or in conflict with a state statute.  The question rests on whether the exercise of authority has been *prohibited* to municipalities."[21]

We articulated this test for resolving conflicts between state and local law in *Jefferson v. State*.[22]  There we announced that "[t]he test we derive from Alaska's constitutional provisions is one of prohibition, rather than [a] traditional test[] such as statewide versus local concern,"[23] and we did not rely on the "local activity rule" we had applied in earlier cases to resolve conflicts between state and local law.[24]  We made clear that prohibition "must be either by express terms or by implication such as where the statute and ordinance are so substantially irreconcilable that one cannot be given its substantive effect if the other is to be accorded the weight of law."[25]

We also reaffirmed that our decision remained "in accord with [our] opinions relating to cases of conflict between local ordinances and state enactments."[26]  Rather than disavowing earlier cases in which we had articulated our approach to such

---

[20]     *Id.* at 43 n.33 (citing *Rubey v. City of Fairbanks*, 456 P.2d 470 (Alaska 1969)).

[21]     *Id.* at 43 (emphasis added); *see also Simpson v. Mun. of Anchorage*, 635 P.2d 1197, 1199 (Alaska 1981) (noting "[u]nder well-established Alaska law, mere inconsistency between an ordinance of a home rule city and a state statute will not ordinarily suffice to render the ordinance invalid"); *Fraternal Ord. of Eagles v. City & Borough of Juneau*, 254 P.3d 348, 359 (Alaska 2011) (holding municipal ban on indoor smoking did not violate state law and was permissible because city had legitimate purpose of protecting public health and safety).

[22]     *Jefferson*, 527 P.2d at 43.

[23]     *Id.*

[24]     *Compare id.*, *with Chugach Elec. Ass'n v. City of Anchorage*, 476 P.2d 115, 122-23 (Alaska 1970) (applying local activity rule).

[25]     *Jefferson*, 527 P.2d at 43.

[26]     *Id.* at 44.

conflicts differently, we clarified that these earlier opinions were consistent with our newly announced rule of prohibition, even if we had described our analysis differently.[27]

### 2. The pervasive state authority test is a form of implied prohibition.

In *Macauley v. Hildebrand* we employed the local activity rule to resolve a conflict between Juneau's municipal school board, which relied on a state statute, and the municipality, which relied on its home rule charter.[28] We ruled that the state statute prevailed, noting that *Chugach* had earlier established that "the scope of home rule power to act in conflict with state legislation is not without limit."[29] We then held that public education was an area of "pervasive state authority" because the constitutional language in article VII, section 1, which gave the State control over public education, was "mandatory, not permissive."[30] We observed that the language of article VII, section 1 "not only requires that the legislature 'establish' a state school system[] but also gives to that body the continuing obligation to 'maintain' the system"; and "the provision is unqualified [such that] no other unit of government shares responsibility or authority."[31]

While *Jefferson* held the local activity rule did not apply, we discussed the *Macauley* ruling in light of that holding and followed the new prohibition test we had just announced:

---

[27]    *Id.*

[28]    491 P.2d 120, 121 (Alaska 1971).

[29]    *Id.* at 121 (citing *Chugach*, 476 P.2d at 117).

[30]    *Id.* at 122; *see* Alaska Const. art. VII, § 1 ("The legislature shall by general law establish and maintain a system of public schools open to all children of the State[.]").

[31]    *Macauley*, 491 P.2d at 122.

Although the statutory prohibition in *Macauley* was direct, this court offered another reason for striking down the questioned ordinance. The statute involved in *Macauley* was an express delegation by the state legislature to municipal corporations of a constitutionally mandated legislative power. *We reasoned that the language of the state constitution mandating maintenance of a school system by the state vested the legislature with pervasive control over public education.* Thus, home rule municipalities were precluded from exercising power over education unless, and to the extent, delegated by the state legislature; and the local ordinance was therefore overridden by the statute.[32]

*Jefferson*'s discussion of *Macauley* suggests that both express and implied state prohibitions of the local measure were at play in *Macauley*.[33] That is, although there was a "direct" statutory prohibition — in other words, an express prohibition — another reason for striking down the ordinance was implied by the constitutional mandate that the legislature retain pervasive control over public education.[34]

The only other case to discuss pervasive state authority when considering a conflict between state and local law followed a similar line of reasoning and also concerned public education. In *Municipality of Anchorage v. Repasky* we considered whether the Anchorage mayor's line item veto of items in the school district budget was prohibited by the constitutional grant of "pervasive state authority in the field of education."[35] We noted that "it is important to the outcome of th[is] case[] . . . that

---

[32] *Jefferson*, 527 P.2d at 44 (emphasis added); *see also Mun. of Anchorage v. Repasky*, 34 P.3d 303, 322 (Alaska 2001) (Bryner, J., dissenting) (interpreting *Jefferson* and noting court "did not stop its analysis" after finding express prohibition but rather "proceeded to examine its newly adopted standard in light of this court's earlier case law").

[33] *See Jefferson*, 527 P.2d at 44.

[34] *See id.* (analyzing *Macauley*, 491 P.2d at 121-22).

[35] 34 P.3d 302, 306-07 (Alaska 2001) (quoting *Macauley*, 491 P.2d at 122).

-11-                                    7699

Anchorage is a home rule municipality."[36]  We concluded that the city charter granted the mayor veto power over the school district budget.[37]

We next considered whether that power was expressly or impliedly prohibited by Alaska law.[38]  We noted that none of the parties had argued that the mayor was expressly prohibited from having veto power but nonetheless concluded that "Alaska law does not expressly prohibit the municipality from conferring [the veto] power on the mayor."[39]  We analyzed whether there were express or implied prohibitions, focusing on whether "state law impliedly prohibits [the mayor's] power."[40]  We then looked at whether there was a prohibition "by implication," that is whether the mayor's veto power was "substantially irreconcilable" with the state education scheme reflected in Alaska law.[41]  We acknowledged that because public education is "a field subject to 'pervasive' state control[,] we ha[d] precluded even home rule municipalities from acting unless they were exercising power delegated by the legislature."[42]

We concluded that the legislature *had* delegated authority to the municipality by "expressly [giving] municipalities the power to approve or reduce the total amounts of the proposed budget."[43]  Because we "construe sections of a statutory scheme to be consistent with one another,"[44] we applied the different statutes — on

---

[36]    *Id.* at 306.

[37]    *Id.* at 310.

[38]    *Id.* at 305.

[39]    *Id.* at 311.

[40]    *Id.* at 310-11.

[41]    *Repasky*, 34 P.3d at 311.

[42]    *Id.*

[43]    *Id.* at 314.

[44]    *Id.* at 315.

education and home rule powers — as consistently as possible to "adhere to a policy choice the Alaska legislature ha[d] already made."[45] We concluded that "[t]he mayoral veto is not substantially irreconcilable with" the statutory scheme.[46] It was therefore not impliedly prohibited by state law.

### B. VMC 9.38 Is Not Impliedly Prohibited.

With this background in mind, we turn to VMC 9.38. The Trappers do not argue that VMC 9.38 is expressly prohibited, and we agree that state law does not expressly prohibit Valdez from enacting its ordinance.

We next consider whether the ordinance is impliedly prohibited[47] — first determining whether the ordinance implicates an area of "pervasive state authority" like public education.[48] If it does not, the ordinance is impliedly prohibited if it and state law are "so substantially irreconcilable that one cannot be given its substantive effect if the other is to be accorded the weight of law."[49]

We have concluded that there is pervasive state authority when the constitutional language granting the authority is "mandatory, not permissive"; imposes a "continuing obligation" upon the State; and is "unqualified [such that] no other unit of government shares responsibility or authority."[50] Public education is the only field over which we have determined that the legislature granted "pervasive state authority."[51] We based our conclusion on article VII, section 1 of the Alaska

---

[45] *Id.*

[46] *Id.* at 314.

[47] *See Jefferson v. State*, 527 P.2d 37, 43 (Alaska 1974).

[48] *Repasky*, 34 P.3d at 311.

[49] *Id.*

[50] *See Macauley v. Hildebrand*, 491 P.2d 120, 122 (Alaska 1971).

[51] *Id.* We acknowledged the State's "compelling argument" that natural resource management is an area of "pervasive state authority" in *Jacko v. State*, 353

Constitution, which provides: "The legislature shall by general law establish and maintain a system of public schools open to all children of the State." This language not only mandates the creation of a public school system, it also requires the State to "maintain" it.[52]

Precisely which field is at issue here is disputed: the Trappers argue that the ordinance implicates "natural resource management," while Valdez asserts the ordinance is within its authority to regulate public safety, protection of property, and land use. The Trappers cite the constitutional language in article VIII, section 2 that declares that the legislature "shall provide for the utilization, development, and conservation of all natural resources belonging to the State." Valdez relies on article X, section 11, which states that home rule municipalities "may exercise all legislative powers not prohibited by law or by charter," and AS 29.35.260(c), which declares home rule municipalities "shall provide for planning, platting, and land use regulation."

We recognize that this is a close case, requiring that we balance two compelling constitutional grounds — home rule municipalities' broad powers and state authority over natural resource management. The stated purpose of VMC 9.38 is to "enact land use regulations" to protect "all persons from hazardous devices and to protect domesticated animals and pets from damage and destruction, which may result from uncontrolled trapping activities."[53] Although the ordinance bars trapping in some areas within the city,[54] it does not seek to limit the quantity or type of animals trapped, who is permitted to trap, or the trapping methods used outside the restricted areas. The ordinance's impact on wildlife or natural resource management is incidental, arising

---

P.3d 337, 346 n.60 (Alaska 2015). But we did not decide the issue in *Jacko* and we do not decide it here.

[52] *See Macauley*, 491 P.2d at 122.

[53] VMC 09.38.010.

[54] *See* VMC 09.38.030.

from its primary focus on protecting individuals and pets from potentially hazardous devices used in trapping. To determine that any ordinance that affects wildlife or natural resources is impliedly prohibited by article VIII, section 2 would severely undermine the authority granted to home rule municipalities to "exercise all legislative powers not prohibited by law or charter."[55] Because VMC 9.38 was explicitly enacted pursuant to two powers granted to home rule municipalities — public safety and land use — not to exercise control over natural resource management, we conclude that pervasive state authority does not prohibit the ordinance.

Whether VMC 9.38 is otherwise impliedly prohibited depends upon whether it is substantially irreconcilable with state law.[56] Valdez, as a home rule municipality, is authorized to regulate land use and public safety.[57] It asserts that it enacted the ordinance to regulate the use of particular parcels of municipal land to protect public safety. The legislature, on the other hand, granted the Board authority over certain natural resources, that is, game.[58] Valdez's exercise of its authority over public safety then does not intrude into the Board's authority.

The Trappers argue that wildlife resource management is within the exclusive jurisdiction of the State. They argue that the legislature's grant of authority to the Board is similarly broad as its grant to DNR, and as a result, home rule municipalities are precluded from restricting trapping. The legislature delegated to

---

[55]    Alaska Const. art. X, § 11.

[56]    *See Repasky*, 34 P.3d at 311 (relying on *Jefferson v. State*, 527 P.2d 37, 43 (Alaska 1974)).

[57]    *See* Alaska Const. art. X, § 11 ("A home rule borough or city may exercise all legislative powers not prohibited by law or by charter."); AS 29.35.260(c) ("A home rule city outside a borough shall provide for planning, platting, and land use regulation . . . .").

[58]    *See* AS 16.05.255(j) (authorizing the Board of Game "to regulate regarding the conservation, development, or utilization of game . . .").

DNR "charge of all matters affecting exploration, development, and mining of the mineral resources of the state."[59] In *Jacko v. State* we interpreted the statutory language to indicate the legislature's intent to make DNR the "sole gatekeeper" of mining projects in Alaska.[60] We held that "the general provision of authority to home rule boroughs to regulate land use does not override the specific delegation of authority to DNR to regulate resource extraction," and we struck down the local initiative at issue as impliedly prohibited by state law because it would have allowed the borough to prohibit mining projects otherwise authorized by DNR.[61]

But the legislature's grant of authority to the Board is not as expansive as its grant to DNR to be the "sole gatekeeper" of mining.[62] Instead, as Valdez argues, the Board was given nonexclusive, discretionary authority to enact regulations it considers "advisable" for thirteen enumerated purposes.[63] The Board was created "[f]or purposes of the conservation and development of the game resources of the state,"[64] and the legislature granted it authority to regulate "regarding the conservation, development, or utilization of game."[65] Nothing in the statutory language suggests that other government entities are prohibited from enacting ordinances that affect trapping.[66] The

---

[59] AS 27.05.010(a).

[60] 353 P.3d 337, 344 (Alaska 2015).

[61] *Id.* at 346.

[62] *See id.*

[63] AS 16.05.255(a) (permitting Board of Game to adopt regulations relating to management of game, including establishing open and closed seasons, establishing means and methods, and setting quotas and limitations on taking of game).

[64] AS 16.05.221(b).

[65] AS 16.05.255(j).

[66] *See* AS 16.05.221(b); AS 16.05.255(j).

discretionary authority delegated to the Board is simply not comparable to the legislature's explicit grant putting DNR in "charge of all matters" in its field.[67]

Valdez's ordinance limiting trapping in certain places for public safety is not "substantially irreconcilable" with the Board's authority to adopt "advisable" hunting and trapping regulations for the purposes of conservation and development.[68] The ordinance does not directly manage the taking of furbearers. It does not create open and closed seasons. It does not limit the number, size, or sex of animals taken. It may have an incidental effect on the number of furbearers taken in the same way prohibiting the discharge of a firearm within city limits has an incidental effect on hunting. But that does not equate to regulating the "utilization, development, and conservation"[69] of wildlife in a way that interferes with state authority to do so. Although the line between safety regulation and natural resource management may not be entirely clear, the Trappers failed to make a showing that the ordinance has such a substantial effect on either the wildlife resource itself or Alaskans' use of that resource that is tantamount to wildlife resource regulation.

Valdez enacted VMC 9.38 pursuant to its authority to regulate land use and public safety. That the ordinance closes municipal areas to trapping does not make it substantially irreconcilable with the State's authority to open other areas to trapping. VMC 9.38 is not impliedly prohibited by state law.[70]

---

[67]     *See* AS 27.05.010(a).

[68]     *See* AS 16.05.255(a), (j).

[69]     Alaska Const. art. VIII, § 2.

[70]     The Trappers also argue that the ordinance is invalid because Valdez did not consider the sustained yield principle required by article VIII, section 4 of the Alaska Constitution. Because we hold VMC 9.38 is a public safety and land use ordinance that was not enacted to assert local control of natural resource management, we need not address this issue.

## V. CONCLUSION

We AFFIRM the superior court's grant of summary judgment.